NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CATHERINE CLINTON,<br><br>Plaintiff,<br><br>v.<br><br>JENNIFER VELEZ, COMMISSIONER, NEW JERSEY DEPARTMENT OF HUMAN SERVICES; and VALERIE HARR, DIRECTOR, NEW JERSEY DEPARTMENT OF HUMAN SERVICES, DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES,<br><br>Defendants. | Civil Action No.: 11-cv-06621 (CCC-JAD)<br><br>**REPORT AND RECOMMENDATION** |

This matter comes before the Court upon the motion of defendants Jennifer Velez, Commissioner of the New Jersey Department of Human Services, and Valerie Harr, Director of the New Jersey Department of Human Services, Division of Medical Assistance and Health Services (together, "Defendants") to dismiss plaintiff Catherine Clinton's ("Plaintiff") Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the recommendation of this Court that Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) be **granted.** It is the further recommendation of this Court that Plaintiff be permitted to file an amended complaint within thirty (30) days of the District Court's order approving this Report and Recommendation, provided that such order is forthcoming.

1

I.  **BACKGROUND**[1]

Plaintiff applied for Medicaid eligibility on January 10, 2011. The Morris County Welfare Agency ("CWA") initially denied Plaintiff's application by way of letter dated June 27, 2011 (the "June 27th Initial Denial Letter"). The denial was based on the CWA's determination that an Income Only Trust, which had been created and funded by Plaintiff on December 15, 2000, as well as a Life Care Agreement, which had been entered into by Plaintiff and her daughter, Catherine Corrreia, on the same date, were not recognized and/or acceptable for Medicaid purposes.[2]

Specifically, the CWA determined that (i) both the Income Only Trust and the Life Care Agreement were created for a "'Project Transfer' of resources;" (ii) the Life Care agreement was a "love and affection contract" that was not acceptable for Medicaid purposes; and (iii) the Income Only Trust was not recognized for Medicaid purposes. The CWA cited Section 10:71-4.10 of the Medicaid Only Manual as the basis for denying Plaintiff Medicaid eligibility, which provides that "an individual shall be ineligible for institutional level services through the Medicaid program if he or she (or his or her spouse) has disposed of assets at less than fair market value at any time during or after the 36 month period, or the 60 month period in the case of a transfer to a trust, immediately before . . . the date the individual applies for Medicaid as an institutionalized individual."

---

[1] The facts are taken from the parties' respective submissions.

[2] According to the Complaint, Plaintiff also executed a Room, Board and Reimbursement Agreement with her daughter, Catherine Correia, and son-in-law, Mark Correia on August 25, 2001 (the "Reimbursement Agreement"). Plaintiff resided at the home of Mrs. and Mr. Correia from August 2001 to October 2010. In or around October 2010, Plaintiff suffered a series of strokes that required her to move to a nursing home where she could receive custodial care.

Plaintiff filed a Complaint on November 8, 2011 and alleged that Defendants incorrectly denied her application for Medicaid eligibility. Plaintiff disputed the CWA's characterization of the Life Care Agreement as a "love and affection contract," and asserted that such contract was a "pay as you go" agreement pursuant to which payments were made by Plaintiff to her daughter, Mrs. Correia, as compensation for the care services provided by Mrs. Correia to Plaintiff after they were rendered. Moreover, Plaintiff alleged that the Reimbursement Agreement provided for the reimbursement of Plaintiff's proportionate share of maintenance, upkeep, and various other costs associated with Plaintiff's residence in her daughter's home from 2001 until 2010. Plaintiff asserted that payments made pursuant to the Life Care Agreement and Reimbursement Agreement were reimbursement for expenses incurred by Plaintiff, and not uncompensated transfers that could be subject to a transfer penalty. Plaintiff also alleged that because both the Income Only Trust and the Life Care Agreement were entered into and funded in December of 2000, any transfer penalty period (whether 36 or 60 months) had expired and could not provide the basis for the CWA to deny Plaintiff Medicaid eligibility.

The relief sought by Plaintiff included: (i) damages pursuant to 42 U.S.C. § 1983 based on the imposition of an unwarranted penalty period; (ii) an order enjoining Defendants from treating the Income Only Trust, Life Care Agreement and Reimbursement Agreement as an uncompensated transfer and not subject to the transfer penalty rules of 42 U.S.C. 1396(c)(1); and (iii) an order directing Defendants to re-determine Plaintiff's Medicaid application in accordance with the Federal Medicaid Act and, pursuant to 42 U.S.C. 1396p(c)(1), to confirm the alleged transfers occurred beyond the look-back penalty period.

Following the filing of Plaintiff's Complaint, Defendants again reviewed Plaintiff's application for Medicaid eligibility. The CWA issued a revised letter on January 26, 2012 (the

3

"January 26th Withdrawal Letter") that withdrew the June 27th Initial Denial Letter and the reasons for denial as set forth therein. The January 26th Withdrawal Letter advised Plaintiff that her application was returned to pending status and requested additional documentation from Plaintiff in order to verify that certain transfers made during the look-back period were made for fair market value. The January 26th Withdrawal Letter requested that this information be provided within fifteen working days.

Although Plaintiff submitted additional documentation to the CWA by letters dated February 1, 2012 and February 3, 2012, the CWA again denied Plaintiff's application for Medicaid eligibility on February 23, 2012 (the "February 23rd Denial Letter"). The CWA determined that Plaintiff failed to provide the requested documentation.[3]

On February 24, 2012, Defendants filed a motion to dismiss the Complaint for lack of subject matter jurisdiction. Defendants asserted that Plaintiff's claims were moot because the June 27th Initial Denial Letter, which formed the basis of Plaintiff's Complaint, had been withdrawn. According to Defendants, the Court could not provide the relief sought in the Complaint because the denial of Plaintiff's application was not based on the CWA's determination that the Income Only Trust and Life Care Agreement were not recognized for Medicaid purposes pursuant to N.J.A.C. § 10:71-4.10, but for Plaintiff's failure to provide the requested documentation pursuant to N.J.A.C. §§ 10:71-2.2 and 10:71-3.1.[4]

Following the filing of its motion to dismiss, Defendants reviewed the documentation submitted by Plaintiff on February 23, 2012. Thereafter, the CWA issued a third amended

---

[3] Plaintiff made a third submission of documentation on February 23, 2012, which appears to have crossed in the mail with the February 23rd Denial Letter.

[4] The Court makes no findings as to the merits of the parties' respective assertions.

eligibility letter on April 17, 2012 (the "April 17th Eligibility Letter"), which found Plaintiff to be eligible for Medicaid effective May 27, 2012. The CWA imposed a transfer penalty of thirteen months and twenty-seven days from the date it found Plaintiff to be eligible for benefits (namely, April 1, 2011) based on the CWA's determination that Plaintiff made certain transfers within the relevant look-back period that were not for fair market value.

Defendants maintain that Plaintiff's Complaint remains moot because the basis for imposing the penalty period set forth in the April 17th Eligibility Letter differs from the basis for the CWA's initial denial of Plaintiff's application. Defendants note that the Complaint seeks to "enjoin[] defendant[s] from treating the Life Care Agreement, Income Only Trust, and [Reimbursement Agreement] as an uncompensated transfer . . .". However, according the Defendants, the April 17th Eligibility Letter did not treat these trusts and agreements as uncompensated transfers in and of themselves, but determined that certain transfers during the look-back period were not adequately verified to demonstrate that they were made for fair market value. Moreover, Defendants argue that the Court cannot declare that certain transfers were made beyond the look-back period, as requested in the Complaint, because the CWA did not penalize Plaintiff for any transfers that occurred beyond the look-back period and Plaintiff has not indicated what transfers so occurred. Plaintiff contends that the transfers identified by the CWA as not being made for fair market value were, in actuality, payments made by Plaintiff under the Life Care Agreement and the Reimbursement Agreement.

## II. LEGAL STANDARD

Article III of the Constitution requires that a case or controversy must exist in order for federal courts to exercise jurisdiction. Muskrat v. U.S., 219 U.S. 346, 356 (1911). The mootness doctrine demands that an "actual case or controversy" exist at all

5

points of the litigation and not just at the time the complaint is filed. <u>New Jersey Tpk. Auth. v. Jersey Cent. Power & Light</u>, 772 F.2d 25, 31 (3d Cir. 1985) (citing <u>Steffel v. Thompson</u>, 415 U.S. 452, 459 n. 10 (1974)). Accordingly, a case is moot when the "issues presented are no longer live" or when the parties "lack a cognizable interest in the outcome." <u>Id.</u> (citing <u>United States Parole Commission v. Geraghty</u>, 445 <u>U.S.</u> 388 (1980)).

A case is not necessarily moot when the action complained of has ended "if the underlying dispute between the parties is one 'capable of repetition, yet evading review.'" <u>Nebraska Press Ass'n v. Stewart</u>, 427 U.S. 539, 546 (1976) (citing <u>Southern Pacific Terminal Co. v. ICC</u>, 219 U.S. 498 (1911)). The "capable of repetition, yet evading review" doctrine is "limited to the situation where two elements: (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." <u>Weinstein v. Bradford</u>, 423 U.S. 147, 149 (1975) (citing <u>Sosna v. Iowa</u>, 419 U.S. 393 (1975)).

Moreover, although a case does not necessarily become moot when a party voluntarily ceases the action complained of, <u>see</u> <u>U.S. v. Concentrated Phosphate Export Ass'n</u>, 393 U.S. 199, 203 (1968), such voluntary cessation does moot a cause of action if subsequent events make it clear that the wrongful behavior could not reasonably be expected to recur – even where the offending conduct, by its nature, evades review. <u>New Jersey Tpk. Auth. v. Jersey Cent. Power & Light</u>, 772 F.2d at 31.

### III. **DISCUSSION**

Because Plaintiff's claims are premised upon the allegedly improper denial of her application for Medicaid eligibility by Defendants based the CWA's determination that the Income Only Trust and Life Care Agreement were not recognized and/or acceptable for Medicaid purposes, Plaintiff's requests for relief are moot now that the Defendants have withdrawn the challenged determination, recognized the Income Only Trust and Life Care Agreement for Medicaid purposes, and re-reviewed Plaintiff's application in accordance therewith.

The Court does not have jurisdiction to enjoin Defendants from "treating the Life Care Agreement, Income Only Trust and Room, Board and Reimbursement Agreement as an uncompensated transfer" because Defendants withdrew this basis for denying Plaintiff's Medicaid eligibility. Nor does the Court have jurisdiction to review Plaintiff's request for an order compelling Defendants to redetermine Plaintiff's Medicaid application and confirm that the alleged transfers occurred beyond the look-back period because Defendants already undertook such a review and recognized the validity of the Income Only Trust and Life Care Agreement. The remedy sought by Plaintiff's request for a declaratory order – namely that the CWA re-review Plaintiff's application and acknowledge the Income Only Trust and Life Care Agreement for purposes of Medicaid eligibility – has already been had by Plaintiff. Thus, even if this Court declared that the justifications for denying Plaintiff Medicaid eligibility as set forth in the June 27th Initial Denial Letter violated the Federal Medicaid Act, it would provide Plaintiff with no legal remedy because her Medicaid eligibility is no longer contingent upon these justifications.

Finally, the Court does not have jurisdiction to consider Plaintiff's § 1983 claim as currently pled because such claim is premised upon the Defendants' June 27th Initial Denial Letter, which allegedly denied Plaintiff Medicaid eligibility by imposing a more restrictive eligibility requirement than is permitted under the Federal Medicaid Act, 42 U.S.C. 1396p(a)(18).  To the extent Defendants imposed such an allegedly improper eligibility requirement in the June 27th Initial Denial Letter, Defendants withdrew that basis for denying Plaintiff Medicaid eligibility and, indeed, deemed her eligible to receive Medicaid benefits as of May 27, 2012.

However, the Court cannot determine, based on the current papers on the record, whether the existing pleadings support a cause of action against Defendants with respect to whether Plaintiff incurred damages based on, for example, the CWA's alleged delay in deciding Plaintiff's Medicaid application.  The Court is unclear as to whether Plaintiff is asserting such a claim through its allegations that the CWA handled Plaintiff's Medicaid application in an "arbitrary, unreasonable and capricious" manner, allegedly "continuing through the filing of this motion to dismiss."  See Certification of Donald M. McHugh in Opposition to Motion to Dismiss, dated April 20, 2012, Dkt. No. 13.  Moreover, it is not clear from the Complaint or the record whether Plaintiff suffered any damages as a result of Defendants' alleged delay in processing and deciding her application subsequent to the CWA's initial denial of Plaintiff's Medicaid eligibility.

For these reasons, the Court recommends that Plaintiff be permitted, should she so choose, to file an amended complaint to re-plead her causes of action in light of the Defendants' amended eligibility letters.

## IV. CONCLUSION

For the reasons stated, it is the recommendation of this Court that Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) be **granted.** It is the further recommendation of this Court that Plaintiff be permitted to file an amended complaint within thirty (30) days of the District Court's order approving this Report and Recommendation.

                                                JOSEPH A. DICKSON, U.S.M.J.

cc:    Hon. Claire C. Cecchi, U.S.D.J.